**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 4, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                        No. 120021

STEPHEN J. MCNALLY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    We granted leave to appeal in this case to consider whether the admission of testimony concerning defendant's silence after his arrest, but before he was given *Miranda* warnings,[1] i.e., pre-*Miranda* silence, as substantive evidence of defendant's guilt is error requiring reversal of defendant's convictions. Following a jury trial, defendant was convicted of second-degree murder, MCL

---

    [1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

750.317, and failure to stop at the scene of an accident in which he was involved and that resulted in serious injury, MCL 257.617. Defendant appealed these convictions, contending that the prosecutor improperly elicited testimony regarding his pre-*Miranda* silence. However, pursuant to its decision in *People v Schollaert*, 194 Mich App 158, 164-165; 486 NW2d 312 (1992), the Court of Appeals affirmed defendant's convictions. We conclude that defendant forfeited the claim of error by not objecting to the prosecutor's questions regarding defendant's pre-*Miranda* silence. Accordingly, we affirm defendant's convictions.

## I. BACKGROUND

On the afternoon of February 10, 1999, defendant and the victim, Harold VanDorn, met in a bar and decided to continue drinking together for the rest of the evening. By 10:00 P.M., both men were intoxicated. After visiting a fast-food restaurant and before reaching their next destination, the two men had a disagreement. They exchanged punches, which prompted VanDorn to leave the truck and start walking in the road.

Defendant drove away a short distance, but then made a U-turn and accelerated in VanDorn's direction. By the time defendant reached VanDorn, the truck was traveling at

approximately forty-five miles an hour. At that point, defendant steered across the centerline at VanDorn, striking and killing him. The police arrested defendant one-half mile from the scene after a preliminary breath test indicated that defendant had a blood alcohol level of 0.207 grams per 210 liters of breath.

Defendant was prosecuted for murder. He did not testify, but his attorney offered two explanations for the accident: first, the truck's brakes and steering were defective; and second, defendant blacked out immediately before striking VanDorn. To rebut these explanations, the prosecutor called several mechanics who examined the truck's brakes and concluded they were not defective. To further rebut these explanations, the prosecutor, during his case-in-chief, elicited the following testimony of the arresting officer, Officer Cacicedo:[1]

> Q. At any point in time that evening, did the defendant indicate to you that he had lost control of the truck?
>
> A. No.
>
> Q. Did he ever indicate to you that there was any mechanical defect with the truck?
>
> A. No.

---

[1] The prosecutor elicited similar testimony from Officers Hillman and Siladke, both of whom assisted in the stop of defendant's vehicle.

*Q.* Did he ever indicate to you that he blacked out that evening?

*A.* No.

*Q.* Did he ever indicate to you that he couldn't remember things that happened that evening?

*A.* No.

Defendant never objected to this testimony, nor did the prosecutor make any further comment at trial concerning this testimony. Defendant was convicted of second-degree murder and leaving the scene of an accident involving serious injury. The court imposed concurrent prison terms of twenty to fifty years for murder and two to five years for leaving the scene of a serious accident.

Defendant appealed, contending that his convictions must be reversed because the prosecutor violated his Fifth Amendment right against compelled self-incrimination by impermissibly eliciting testimony regarding his pre-*Miranda* silence. However, pursuant to *Schollaert, supra* at 164-165,[2] the Court of Appeals affirmed defendant's convictions and stated, "The challenged testimony did not concern silence during custodial interrogation or silence in reliance on *Miranda* warnings. Therefore, defendant's

_____

[2] We have no occasion to consider the decision reached by the Court of Appeals in *Schollaert* in light of our disposition of this case under *Carines*.

2

silence was not constitutionally protected." Unpublished opinion per curium, issued July 20, 2001 (Docket No. 223059). This Court granted defendant's application for leave to appeal. 467 Mich 896 (2002).

## II. STANDARD OF REVIEW

Unpreserved claims of constitutional error are reviewed for "plain error." *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

## III. ANALYSIS

### A. FORFEITED ERROR

Defendant asks us to review a claim of error that he did not preserve at trial. We thus apply the principles articulated in *Carines, supra* at 763:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. . . . Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [Citations and internal quotation marks omitted.]

Accordingly, in order for defendant to avoid forfeiture, he must show that the prosecutor's questions regarding his

pre-*Miranda* silence affected his substantial rights. That is, he must show that the prosecutor's questions affected the outcome of the lower court proceedings.

The prosecutor's evidence against defendant included two eyewitnesses. The first, John Dalling, testified that defendant slowly drove past the victim, made a sharp U-turn in the middle of the road, crossed two lanes while accelerating toward the victim, hit the victim, and then drove on. He stated, "it's like he got in position and pretty much just went straight at him, across both lanes and went into the middle turning lane and hit him head on." When asked if defendant's truck picked up speed after he made the U-turn, Dalling stated, "Yes, it did. It was like if he just gunned it." According to Dalling, after defendant hit the victim, he made another U-turn and slowly drove past the victim's body. Dalling further testified that he did not notice any problems with the truck, i.e., it was not veering in and out of lanes. He also testified that he did not hear any brakes or tires squeal before defendant struck the victim. Nor did he see any brake lights come on before defendant struck the victim. According to Dalling, defendant did not make any attempt to swerve away from the victim.

A second eyewitness, Matt Walsh, was driving toward defendant's truck, in light traffic with clear visibility, when he noticed defendant's headlights veer sharply and he saw the victim go over defendant's hood. Walsh stopped his truck in front of the victim and got out to help. Walsh saw defendant's truck return to pass the victim slowly and then drive away.

Further, the prosecutor introduced two expert witnesses who testified that defendant's truck was mechanically sound. Specifically, one expert witness concluded that the steering and braking mechanisms were worn, but in working condition. Neither of the prosecutor's expert witnesses found mechanical difficulties in the truck that would have caused defendant to lose control of the vehicle or swerve uncontrollably, or that would have prevented defendant from stopping the truck. Indeed, even defendant's expert witness conceded that, when he drove the vehicle, it always stopped when the brakes were applied and it did not deviate course from one lane to another.

Given this evidence of defendant's guilt, we conclude that the prosecutor's questions regarding defendant's pre-*Miranda* silence, even if error, did not affect the outcome of the lower court proceedings. In other words, defendant

would have been found guilty independent of the prosecutor's questions regarding defendant's pre-*Miranda* silence. Therefore, because defendant has not met his burden of establishing that the alleged error affected the outcome of the lower court proceedings, he is unable to avoid forfeiture.[3] He has forfeited his claim of error by not objecting to the prosecutor's questions regarding his pre-*Miranda* silence.[4]

---

[3] Because we conclude that the prosecutor's questions did not affect the outcome of the lower court proceedings, it is unnecessary to determine if the prosecutor's questions were permissible and "it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Construction Co v Bricklayers and Allied Craftsmen,* 468 Mich 722, 734; 664 NW2d 728 (2003).

In response to the partial concurrence and partial dissent, we can only state that it is not to "evade" a constitutional issue for this Court, after full consideration of the arguments, to reach the conclusion that a matter may adequately be resolved by means other than constitutional analysis. Indeed, it is incumbent on a court of law to do exactly this. While it would be convenient if the decisions of this Court were always defined by the terms of our grant orders, in the real world, in which arguments are sometimes unanticipated and in which briefs and oral arguments often shed new light upon the issues presented by a case, no responsible court can decide cases in such a constricted manner. No such court can be oblivious to the fact that its initial estimation of the issues presented by a case may have been imperfect.

[4] Because the admission of evidence regarding defendant's pre-*Miranda* silence did not affect the outcome of the lower court proceedings, i.e., defendant was not

IV. CONCLUSION

Because defendant failed to object to the prosecutor's questions regarding defendant's pre-*Miranda* silence and these questions did not affect the outcome of the lower court proceedings, defendant has forfeited his claim of error. Accordingly, we affirm defendant's convictions.

Stephen J. Markman
Maura D. Corrigan
Michael F. Cavanagh
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.

---

prejudiced, defendant's claim of ineffective assistance of counsel is also without merit. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                  No. 120021

STEPHEN J. MCNALLY,

    Defendant-Appellant.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the result because it is true that the alleged error was harmless given that other evidence establishing defendant's guilt was substantial.

However, the majority unwisely evades the question whether a defendant's postarrest, pre-*Miranda*[1] silence is admissible in a prosecutor's case-in-chief.

I write separately because I disagree with the majority's choice to evade and fail to decide the substantive issue that this Court specifically ordered to be briefed and argued in this case.

_____

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

In October 2002, this Court granted leave to appeal, specifically limiting the grant to whether defendant's postarrest, pre-*Miranda* silence was admissible and whether defendant was denied the effective assistance of counsel because trial counsel failed to object to the admission of testimony relating to defendant's silence.[2] In April of 2003 this Court heard oral argument in the case. The Court failed to issue a decision by July 31, 2003, and ordered that the case be set for reargument and resubmission.[3] The parties again argued this case in October 2003, addressing the same questions—whether it was error for the prosecutor to have introduced defendant's postarrest, pre-Miranda silence and whether defendant was denied the effective

---

[2] The October 30, 2003, order granting leave read: "On order of the Court, the delayed application for leave to appeal from the July 20, 2001 decision of the Court of Appeals is considered, and it is GRANTED, limited to Issue I in the defendant's application." 654 NW2d 328 (2002). Defendant's Issue I on his application for leave to appeal read:

> Defendant was denied his state and federal constitutional rights to due process and a fair trial, where the prosecutor elicited evidence in his case-in-chief of defendant's post-arrest silence; defendant was also denied his state and federal constitutional right to the effective assistance of counsel, where defense counsel failed to object.

[3] 469 Mich 864 (2003).

2

assistance of counsel because trial counsel failed to object to the evidence of defendant's silence.

The majority now chooses to dodge the substantive issue—whether the defendant's silence was admissible in the prosecutor's case-in-chief—by skipping over the first two factors in *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999)*,* whether error occurred and whether the error was plain, and moving directly to whether any hypothetical error would be harmless.[4]  In declining to address whether error occurred, the majority leaves unanswered the question whether a defendant's postarrest, pre-*Miranda* silence is admissible in the prosecutor's case-in-chief.

The majority justifies its refusal to decide the substantive issue by referencing a principle of judicial review that "questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Constr Co v Bricklayers and Allied Craftsmen,* 468 Mich 722, 734; 664 NW2d 728 (2003).

But that general principle does not apply here.  The phrase used by the majority is a convenient and often-used

---

[4] The three requirements to avoid forfeiture of an issue under the plain error rule are "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines, supra* at 763.

3

shorthand for the principle that "[c]onsiderations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress [or the Legislature] unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it." *Ashwander v Tennessee Valley Authority,* 297 US 288, 341; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J., concurring).

One of the earliest applications of this rule in Michigan was in 1874, when this Court said "any consideration of the constitutional question might have been waived, upon the ground that a legislative act should not be declared unconstitutional unless the point is presented in such a form as to render its decision imperative . . . ." *Weimer v Bunbury,* 30 Mich 201, 218 (1874).

The reasons behind such judicial restraint include the delicacy and finality of judicial review of legislative acts, separation of powers concerns raised by ruling on the acts of the other two branches of government, and the need to show respect for the other two branches of government. See *Rescue Army v Municipal Court of Los Angeles,* 331 US 549, 571; 67 S Ct 1409; 91 L Ed 1666 (1947), and Kloppenberg, *Avoiding serious constitutional doubts: The*

*supreme court's construction of statutes raising free speech concerns*, 30 UC Davis L R 1, 13-14 (Fall, 1996).

These concerns are not implicated here, because the constitutionality of an act of the Legislature or the Governor is not at issue. In deciding whether the defendant's postarrest, pre-Miranda silence was admissible in the prosecutor's case-in-chief, the Court would not be ruling on the validity of a legislative or executive decree, but on a lower court's decision whether to admit certain testimony. See Kloppenberg, *Avoiding constitutional questions*, 35 B C L R 1003, 1054 (1994).

Evading the twice-argued question, and not resolving this substantive issue, leaves the lower courts without guidance from this Court. That drawback is illustrated by the fact that in May 2003 this Court ordered that *People v Maxon* be held in abeyance for this case. *People v Maxon,* 662 NW2d 753 (2003). In *Maxon* the question is whether defendant's prearrest, pre-*Miranda* silence was admissible during the prosecutor's case-in-chief. By refusing to decide the issue now, the Court merely postpones the issue until another term.

This case has been in this Court for 1 ½ years. The Court granted leave to appeal in the case, heard oral argument, and held the case over for reargument and

5

resubmission. The majority now affirms the decision of the Court of Appeals on the ground of harmless error. The majority could have simply denied leave in October 2003. By avoiding the substantive issue the majority has wasted the time and resources of the parties and this Court.

The issue whether the prosecutor's use of defendant's postarrest, pre-*Miranda* silence was error is squarely before the Court. This case has been briefed, argued, and reargued. The parties and the people deserve a clear answer.

Elizabeth A. Weaver

6