# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 21, 2017

v

No. 333496
Wayne Circuit Court
LC No. 15-006221-01-FH

LETIF ROSANNA ALEXANDER,

Defendant-Appellant.

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] her jury trial convictions of using false pretenses to obtain money in an amount of $1,000 or more, but less than $20,000 (larceny by false pretenses), MCL 750.218(4)(a), and embezzlement by an agent or trustee of over $1,000, but less than $20,000, MCL 750.174(4)(a). Defendant was sentenced to two years' probation with three months to be served in jail. We affirm.

This case arises from defendant's employment with Michigan Rehabilitation Services (MRS) as a vocational counselor. MRS is a vocational rehabilitation agency under the Michigan Department of Health and Human Services (DHHS) that dispenses state and federal funds to provide assistance to people with mental or physical disabilities to help them obtain employment. As a vocational counselor, defendant provided individualized services to a caseload of customers to help them obtain employment.

After defendant had been employed by MRS for a few months, her supervisor received two anonymous complaints about defendant from the welfare fraud hotline. Subsequent investigation into defendant's customer cases revealed suspicious authorizations and computer purchase discrepancies. Senior Agent Jessica Mitchell from the Michigan Inspector General's Office discovered that defendant had improperly issued State checks to seven of her customers, and demanded that her customers give her the cash from the checks. Additionally, defendant had improperly purchased computers, put the computer purchase receipts in each customer file, and

---

[1] *People v Alexander*, unpublished order of the Court of Appeals, entered August 5, 2016 (Docket No. 333496).

-1-

then returned each computer the next day for a cash refund without placing the return receipts in her customer files. Defendant asked several of her customers to lie and say that she had provided them with computers, while she kept the cash refunds and never provided computers or the authorized funds to her customers.

On appeal, defendant first argues that she was denied a fair trial when the prosecutor introduced evidence that she had refused to be interviewed by Agent Mitchell without an attorney present. Further, defendant argues that defense counsel's failure to object to the allegedly improper reference constituted ineffective assistance of counsel. We disagree.

At defendant's trial, the following exchange occurred between the prosecutor and Agent Mitchell during Agent Mitchell's direct examination:

[*Prosecutor*]: You had a chance to speak with [defendant]?

[*Mitchell*]: I did.

*Prosecutor*: And where did, where did this conversation or where did you have a chance to speak with her at?

*Mitchell*: Initially, I attempted to talk to her at the MRS Office in Livonia.

*Prosecutor*: Okay. And were you successful?

*Mitchell*: Not at that time.

*Prosecutor*: Okay. And why not?

*Mitchell*: She asked for her attorney to be present.

*Prosecutor*: Did there come a point and time where you had a chance to speak with her?

*Mitchell*: I did.

*Prosecutor*: And when and where did that happen?

*Mitchell*: That would have been five days later, April 21st, I believe. [Defendant] and her attorney came to my office located in St. Johns, Michigan

\* \* \*

*Prosecutor*: Okay. Can you indicate exactly what it was that you, you talked to [defendant] about?

*Mitchell*: Yes. I explained to her the allegations starting the investigation, and I, I began with asking her specifically in regards to her job duties and how long she had been an employee with the State of Michigan, the training she had received. . . .

-2-

Defendant argues that this line of questioning and Agent Mitchell's reference to her five-day silence violated her Fifth Amendment right to remain silent and not have her silence used as substantive evidence against her.

"Constitutional questions are reviewed de novo." *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). Because defendant failed to object to the prosecutor's question or Agent Mitchell's comment at trial, this issue is unpreserved. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). "This Court reviews the effect of an unpreserved constitutional error under the plain-error standard." *Shafier*, 483 Mich at 211.

"No person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V; see also Const 1963, art 1, § 17 ("No person shall be compelled in any criminal case to be a witness against himself . . . ."). "*Miranda v Arizona*, 384 US 436, 444-439, 467-468; 86 S Ct 1602; 16 L Ed 2d 694 (1966), established 'guidelines for law enforcement agencies and courts to follow' in order to protect the privilege against compelled self-incrimination during custodial police interrogations." *Shafier*, 483 Mich at 213. "[U]nder *Miranda*, every person subject to interrogation while in police custody must be warned, among other things, that the person may choose to remain silent in response to police questioning." *Id*. Thus, if a defendant exercises his right to remain silent, that silence cannot be used against him at trial in most instances and "prosecutorial references to a defendant's post-arrest, post-*Miranda* silence [generally] violate a defendant's due process rights." *Id*. at 212-213.

However, a defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda* warnings. *People v McReavy*, 436 Mich 197, 201, n 2; 462 NW2d 1 (1990); *People v Schollaert*, 194 Mich App 158, 163; 486 NW2d 312 (1992). Where, as here, the defendant never receives a *Miranda* warning or otherwise explicitly invokes his right to remain silent, "no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence." *People v Solmonson*, 261 Mich App 657, 665; 683 NW2d 761 (2004).

In the instant case, the record does not indicate that Agent Mitchell gave defendant *Miranda* warnings before defendant requested that their interview be delayed until her attorney could be present. Indeed, when Agent Mitchell visited the MRS Office, defendant was not in custody. There is no indication that defendant was restrained in any manner, and she was free to leave once she requested that the interview be delayed. There is nothing in the record to indicate that defendant was subjected to questioning while at the office or that defendant invoked her right to silence in response to *Miranda* warnings. Further, while Agent Mitchell made passing reference to the fact that defendant was not initially willing to speak with her about the investigation, the prosecutor did not use Mitchell's response in a follow-up question or in closing argument, and never attempted to use defendant's delay in speaking with Agent Mitchell against defendant. Thus, defendant's silence was not constitutionally protected and her constitutional rights were not violated when Agent Mitchell referenced her five-day silence during trial. *Schollaert*, 194 Mich App at 164.

Defendant also argues that she received ineffective assistance of counsel because defense counsel failed to object to Agent Mitchell's reference to defendant's silence. Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.

*People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998). Because there was no violation of defendant's Fifth Amendment rights, defense counsel was not ineffective for failing to raise an objection on this ground.

Next, defendant argues that she was denied a fair trial when the prosecutor compared her to notorious criminal Bernie Madoff, and that defense counsel's failure to object to the alleged prosecutorial error denied her of the effective assistance of counsel. Again, we disagree.

At defendant's trial, the following exchange occurred after the prosecutor objected to a line of questioning pursued by defense counsel during his direct examination of defendant:

> [*Defense counsel*]: And the money that you received from taking the computers back, did you use that money personally?
>
> [*Defendant*]: No.
>
> *Defense counsel*: Okay. And tell us about your or tell the jury about your, your household income.
>
> *Defendant*: Okay. Well, my --
>
> *Prosecutor*: Your Honor, I guess what's the relevance?
>
> *Defense counsel*: Well, it goes to motive, Your Honor.
>
> *Prosecutor*: Bernie Madoff stole millions, but he still stole. He was a millionaire. I don't think that's relevant [sic] issue, Judge.
>
> *The court*: Alright. I'll overrule the objection.
>
> \* \* \*
>
> *Defendant*: Okay. Between myself and my husband we had income ranging from between seven and then [sic] thousand a month.

Defendant argues that the prosecutor's comparison of defendant to Bernie Madoff prejudiced the jury and denied defendant a fair trial.

Because defendant failed to raise a contemporaneous objection to the prosecutor's allegedly improper comment and request a curative instruction, her claim of prosecutorial error is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Appellate review of unpreserved claims of prosecutorial error is limited to ascertaining whether there was plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

In view of the prosecutor's duty "to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor's comparison between a

defendant's character and the character of an infamous criminal can be considered improper, see *People v Kelley*, 142 Mich App 671, 673; 370 NW2d 321 (1985) (holding that the prosecutor's comparison between the defendant and John Wayne Gacy, a convicted murderer and sexual assailant, was clearly prejudicial and improper"), but a mere reference to an infamous criminal does not automatically require reversal, see *People v Sharbnow*, 174 Mich App 94, 101; 435 NW2d 772 (1989) (concluding that the prosecutor's comparison between the defendant and Richard Nixon was not improper), overruled on unrelated grounds by *People v Grissom*, 492 Mich 296, 300; 821 NW2d 50 (2012). As with other claims of prosecutorial error, it is necessary to examine the prosecutor's allegedly improper remarks in context. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

Here, the prosecutor's reference to Bernie Madoff did not have the intent of denigrating defendant's character. Rather, it was an argument regarding the relevancy of defendant's household income and an attempt to demonstrate that personal wealth does not preclude a finding of motive to steal. Given the similarity between the crimes Bernie Madoff committed and the crimes defendant was accused of, it was perhaps imprudent for the prosecutor to use Bernie Madoff as an example in making his argument. See *Kelley*, 142 Mich App 673. However, the comparison did not constitute plain error and does not require reversal. Moreover, the trial court instructed the jurors that the lawyers' statements and arguments were not evidence. This instruction was sufficient to cure any potential prejudicial effect, and defendant fails to rebut the presumption that the jury followed the court's instructions. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Additionally, because any objection to the prosecutor's comment would have been futile, defense counsel's failure to object did not constitute ineffective assistance of counsel. *Darden*, 230 Mich App at 605.

Finally, defendant argues that the prosecutor presented insufficient evidence to sustain her convictions of larceny by false pretenses and embezzlement. We disagree.

This Court reviews challenges to the sufficiency of evidence de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). This Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). This Court resolves conflicts in the evidence in favor of the prosecution, and will not interfere with the trier of fact's determinations regarding the weight of evidence and the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

For a conviction of larceny by false pretenses under MCL 750.218(4)(a), the prosecutor must prove:

> (1) the defendant must have used a pretense or made a false statement relating to either past or then existing facts and circumstances, (2) at the time the pretense was used the defendant must have known it to be false, (3) at the time the pretense was used the defendant must have intended to defraud someone, (4) the accuser must have relied on the false pretense made by the defendant, (5) because of this

reliance that person must have suffered the loss of some money or other valuable thing, and (6) the property obtained by the defendant must have had a fair market value of [$1,000 or more, but less than $20,000] at the time of the crime. [*People v Lueth*, 253 Mich App 670, 680-681; 660 NW2d 322 (2002).]

Defendant challenges only the third element, arguing that the intent element was not proven beyond a reasonable doubt. Contrary to defendant's assertion, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that all the essential elements of false pretenses, including the element of intent, were proved beyond a reasonable doubt. At defendant's trial, three witnesses testified that defendant had instructed them to lie and say that she had provided them with computers when she had not. There was also substantial testimony regarding defendant's elaborate method of subverting a department store's $800 limit return policy in order to receive cash refunds for all of the computers. Moreover, although defendant claimed that she returned the computers so that the State would not be "stuck" with computers no one could use, Agent Mitchell testified that there had been no return receipt in any of defendant's case files indicating that she had returned the computers for cash refunds. The jury could have reasonably inferred from this evidence that defendant sought to defraud the State of Michigan and her customers when she returned the computers for cash refunds. Thus, the prosecution presented sufficient evidence to sustain defendant's conviction of false pretenses.

> To convict a defendant of embezzlement, the prosecutor must prove:
>
> (1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal. [*Lueth*, 253 Mich App at 683.]

Defendant challenges the fourth and sixth elements, asserting that her embezzlement conviction should be vacated because the prosecutor presented no evidence that she converted the funds for her own use or that she had the intent to defraud. Although the prosecutor disagrees with defendant's assertions with regard to the fourth and sixth elements, the prosecutor quite curiously suggests that defendant's embezzlement conviction must be vacated because the evidence did not prove that defendant came into possession of the retained funds "rightfully." We address the prosecutor's meritless concession before analyzing defendant's arguments in turn.

The prosecutor relies on this Court's opinion in *People v Schrauben*, 314 Mich App 181; 886 NW2d 173 (2016), which supports the existence of an inherent element of "rightful" procurement of funds for the crime of embezzlement. In *Schrauben*, the defendant worked for two funeral homes. *Id*. at 198-200. Although the defendant was not permitted to handle financial matters as an employee, the funeral home owner eventually discovered that the defendant had been making deposits, that customers who had intended to purchase prepaid funeral plans had actually written checks to a holding company owned by the defendant that was not associated with the funeral home business, and that "several of the escrow accounts and

insurance policies used to fund the prepaid funerals had been paid out before the deaths of the individuals who had purchased those plans." *Id.* The defendant was charged with several counts of embezzlement, but the trial court dismissed those charges when it granted the defendant's motion for a directed verdict of acquittal. *Id.* at 198. On appeal, this Court affirmed the trial court's decision with the following explanation:

> In this case, the money never belonged to the funeral home. . . . The money belonged to the contract beneficiaries until their death and upon performance of the funeral home's obligations, neither of which had occurred at the time of trial.
>
> Additionally, the money did not come into defendant's possession "because of the relationship of trust. . . ." The money came into defendant's possession because he tricked the insurance companies into writing checks to the funeral home by filing false death claims. In discussing the difference between larceny and embezzlement, our Supreme Court has stated that with embezzlement "there must be an unlawful appropriation of that which comes into possession rightfully." In this case, defendant did not come into possession of the money rightfully. Therefore, the trial court did not err by granting defendant's motion for a directed verdict of acquittal and dismissing defendant's convictions[.] [*Id.* (citations omitted).]

Despite the prosecutor's assertion to the contrary, we believe this case is easily distinguished from *Schrauben*. Although in that case the defendant used the façade of authority to receive payment on behalf of his employer to defraud his employer's customers, the defendant was in fact not authorized by his employer to handle any financial affairs. In contrast defendant, as an MRS counselor, was specifically authorized to obtain funds from the State of Michigan in order to purchase computers for customers, and the money at issue here clearly came into defendant's possession because of her relationship of trust with her employer. Defendant used the confidence placed in her by her employer to trick the State of Michigan into issuing checks to her customers for falsely claimed goods and services her customers would never receive. Although defendant ultimately mishandled the funds, they initially entered her possession via a rightful exercise of her authority to act on behalf of her employer. The inherent element of rightful procurement is clearly satisfied.

Similarly, when viewed in a light most favorable to the prosecution, we find that the evidence presented at trial was sufficient to support the inferences that defendant converted the funds for her own use or that she had the intent to defraud. As previously discussed, the prosecutor presented substantial evidence indicating that defendant had the intent to defraud the State of Michigan and her customers. Further, while defendant denied using any of the funds for personal use, she admitted to keeping the cash hidden away in a drawer at work. Testimony indicated that defendant was given all of the money from the checks and never returned any money to Agent Mitchell or her employer during the investigation. There is no evidence that any of the retained funds were returned to the State or given to defendant's customers. The jury could have reasonably inferred from this evidence that defendant had not only sought to defraud the State of Michigan, but had also converted the funds for her personal use.

Although neither party raises the issue on appeal, we note that defendant's judgment of sentence inaccurately reflects that defendant was convicted of two counts of embezzlement. Although defendant was charged with two counts of embezzlement, the jury only convicted her of one. We therefore remand for correction of this error.

Defendant's convictions and sentences are affirmed. We remand the matter for the ministerial task of correcting the error in defendant's judgment of sentence. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola