# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK JOSEPH MANIACI,

        Defendant-Appellant.

UNPUBLISHED
June 8, 2017

No. 330927
St. Clair Circuit Court
LC No. 15-000560-FH

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of third-degree criminal sexual conduct ("CSC"), MCL 750.520d(1)(a), one count of fourth-degree CSC, MCL 750.520e(1)(a), one count of accosting a child for immoral purposes, MCL 750.145a, and one count of using a computer to commit a crime, MCL 752.796. He was sentenced to 95 months to 15 years in prison for each of the third-degree CSC convictions, one to two years in prison for the fourth-degree CSC conviction, two to four years in prison for the accosting a child conviction, and 56 months to seven years in prison for the using a computer to commit a crime conviction. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of defendant's sexual contact with AA, a teenager who participated in competitive clay shooting at the Richmond Sportsman's Club, where defendant was president.

AA first met defendant during the summer before her eighth grade year, at which time she and defendant were members of a five-person shooting squad. Defendant later became AA's coach and mentor as well as a family friend.

In January 2014, defendant, who was 46 years old at the time, overheard 15-year-old AA talking to her friend about pictures of herself in bikinis that she was considering for a trip to Florida. At defendant's request, AA texted the pictures to defendant's phone. AA then began corresponding with defendant through a mobile application called Kik Messenger ("Kik"). Some of their conversations were sexual in nature. During these exchanges, defendant and AA exchanged sexually explicit messages, expressing their mutual desire for one another and describing sexual acts in which they hoped to engage. AA also sent messages to defendant mentioning sexual encounters with her boyfriend. On one occasion, AA asked defendant to

-1-

purchase contraceptives for her, explaining that a condom broke when she had intercourse with her boyfriend.[1] These conversations continued until the end of 2014.

In addition, AA testified that she had three physical encounters with defendant. Two of the incidents occurred inside trap houses[2] located on the premises of the Richmond Sportsman's Club while AA and defendant were reloading their equipment. During the first incident, as AA exited the trap house, defendant pulled her back and touched his pelvis to her buttocks. During the second incident, defendant unbuttoned AA's jeans and digitally penetrated her vagina.

AA testified that the third incident occurred in November 2014. At the time, AA was volunteering with defendant at the club because she needed service hours for school. While AA was helping defendant unload supplies from a pole barn, defendant, who also was inside the barn, shut and locked the door. He removed AA's pants and directed her to sit. Defendant performed oral sex on AA. When defendant got up to check the door, AA pulled her pants up. Defendant then approached AA again, pulled her pants down, and inserted his penis into her vagina. When the act was completed, they left the barn.

AA testified that she initially liked the attention, but felt like the situation had spun out of control by November or December 2014. In December 2014, AA told her best friend, LS, about the incident in the barn. In January 2015, AA told her teacher about defendant's abuse, expressing that she could not handle it anymore and felt suicidal. The teacher called AA's mother to the school, and her mother took AA to the hospital. The police were contacted, and defendant was arrested following an investigation.

At the close of the prosecution's case-in-chief, defendant moved for a directed verdict on all of the charges against him. The trial court denied the motion with regard to all of the charges except two of the fourth-degree CSC charges. With regard to those offenses, the trial court found that it "did not hear three separate instances of criminal sexual conduct in the fourth degree . . . ."

Ultimately, the jury was unable to reach a verdict on the three third-degree CSC charges. However, it found defendant guilty of fourth-degree CSC, accosting a child for immoral purposes, and using a computer to commit the crime of accosting a child for immoral purposes.

A few months later, defendant was retried on the three third-degree CSC charges. The testimony offered at the second trial was substantially similar to the testimony offered at the first trial concerning those charges. The jury found defendant guilty of all three counts. Defendant was later sentenced as previously described.

## II. SUFFICIENCY OF THE EVIDENCE

---

[1] As discussed later in this opinion, evidence of this conversation was admitted during defendant's first trial, but not his second trial.

[2] AA described the trap houses as "cement block [buildings]" built partially below the ground that "hold a trap machine[,] which throws the clay targets that you shoot."

Defendant argues that his convictions of accosting a child for immoral purposes and using a computer to commit a crime were not supported by sufficient evidence. We disagree.

## A. STANDARD OF REVIEW

In ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. ANALYSIS

Defendant first challenges the sufficiency of the evidence supporting his accosting a child conviction, arguing that the evidence was insufficient because (1) no sexual acts followed the text messages on which the charge was based, and (2) AA initiated each of the contacts. Defendant's claims have no merit.

The plain language of the statute proscribing accosting a child for immoral purposes, MCL 750.145a, does not require that the victim actually engage in a proscribed act. MCL 750.145a provides:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

In *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011), the Michigan Supreme Court explained that the statute recognizes alternative ways of committing the offense:

> Because the Legislature used the disjunctive term "or," it is clear that there are two ways to commit the crime of accosting a minor. A defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act. Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) encouraged (2) a child (or an individual whom the defendant believed to be a

-3-

child) (3) to commit (4) a proscribed act. Taken as a whole, the statute permits conviction under two alternative theories, one that pertains to certain acts and requires a specific intent and another that pertains to encouragement only and is silent with respect to *mens rea.* [Footnote omitted.]

Under the second theory, "the act of encouragement is the evil in itself." *Id.* at 500.

Accordingly, we are not persuaded by defendant's argument that a conviction under the statute requires evidence that the victim actually engaged in a proscribed act. Here, as in *Kowalski*, the highly sexualized conversations between defendant, a 46-year-old man, and AA, a 15-year-old girl, "in and of themselves, were immoral, grossly indecent, delinquent, and depraved acts that constituted the *actus reus* under either prong of the offense." *Id.* at 506-507.[3] Defendant's text messages to AA clearly encouraged her to "to submit to an act of sexual intercourse or an act of gross indecency," regardless of whether the act or acts actually occurred in the future. MCL 750.145a. In addition, the fact that the victim may have initiated the conversations is not relevant where the evidence showed that defendant engaged in, or contributed to, the conversations in a manner that encouraged the victim to commit an act proscribed by the statute. *Id.* at 499. Thus, for all of these reasons, defendant has not shown that his conviction for accosting a child for immoral purposes was supported by insufficient evidence.

Defendant also argues that his conviction for using a computer to commit a crime, MCL 752.796, was not supported by sufficient evidence solely because it was based on his conviction for accosting a child for immoral purposes, which, according to defendant, was not supported by sufficient evidence.[4] Given our conclusion that his accosting a child for immoral purposes conviction was supported by sufficient evidence, we reject defendant's claim.

### III. EXCLUSION OF EVIDENCE

---

[3] See also *id.* at 509 ("These highly sexualized conversations between defendant (an adult stranger) and a person whom he presumed to be a child, in which the child sent the stranger her photograph, was asked for her phone number, and was continuously objectified in a sexual manner, would have given an actual child a distorted and unhealthy view of human relationships and would have involved her in a distinctly antisocial set of behaviors. As the prosecutor explained at trial, 'sex talk over the internet,' such as the highly sexualized conversations that undisputedly occurred between defendant and someone whom he believed to be a 15–year–old girl, "in and of itself is a delinquent act for a minor to be engaging in . . . ." We agree with the prosecutor that, according to 'common everyday understanding . . . this [kind of sex talk over the Internet] is delinquent behavior . . . .' By engaging in the chats, defendant committed the *actus reus* of accosting a minor under either prong of the offense.").

[4] MCL 752.796(1) provides that "[a] person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime."

Next, defendant argues that the trial court erred in excluding certain evidence under the rape-shield statute, MCL 750.520j. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An abuse of discretion occurs if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). In general, there is no abuse of discretion when the trial court's decision involves a close evidentiary question. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). "When the decision involves a preliminary question of law, . . . such as whether a rule of evidence precludes admission, we review the question de novo." *Mardlin*, 487 Mich at 614.

Even if a trial court's admission or exclusion of evidence was improper, we will not set aside a judgment or verdict unless it affirmatively appears that the error resulted in a miscarriage of justice. MCL 769.26. Put another way, under MCL 769.26, "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). See also MCR 2.613(A) ("An error in the admission or the exclusion of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

## B. ANALYSIS

The rape-shield statute, MCL 750.520j, provides, in pertinent part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

In exercising its discretion to admit or exclude evidence under the rape-shield statute, "the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *People v Hackett*, 421 Mich 338, 349; 365 NW2d 120 (1984).

First, defendant argues that the trial court erred in excluding a text message that AA sent to defendant indicating an intent to have sex with her boyfriend the following weekend. Defendant argues that the statement was not protected by the rape-shield statute because it was not evidence of a specific instance of the AA's sexual conduct, as it merely referenced conduct that she expected to occur in the future. We need not decide whether the statement was inadmissible under the rape-shield statute because we agree with the trial court's alternative ground for excluding the evidence on the basis of relevance. "Evidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. AA's statement did not tend to make it more or less probable that defendant committed the charged acts, nor did it have any real bearing on the victim's credibility regarding her allegations against defendant. See *People v Mills*, 450 Mich 61, 66-68, 72; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (discussing the components of relevancy). Notably, consent was not at issue in this case given the fact that AA was under 16. See *People v Sharpe*, ___ Mich App ___, ___ n 5; ___ NW2d ___ (2017) (Docket Nos. 332879, 333872); slip op at 8 n 5; *People v Gaines*, 306 Mich App 289, 309; 856 NW2d 222 (2014). The trial court did not abuse its discretion when it excluded the evidence.

Second, defendant argues that the trial court abused its discretion when it excluded, during the second trial, a text message that AA sent to defendant stating that a condom broke while she was having sex with her boyfriend and requesting that defendant obtain the "Plan B" contraceptive pill for her. Defendant argues that the statements were admissible under the rape-shield statute to show the "source or origin of . . . disease." MCL 750.520j(1)(b). Specifically, defendant contends that the message was admissible to show that the emotional distress and suicidal thoughts that preceded AA's disclosure of the events to her teacher were the result of her sexual conduct with her boyfriend rather than any improper conduct by defendant. In addition to the plain language of the rape-shield statute, defendant relies on *People v Mikula*, 84 Mich App 108, 114; 269 NW2d 195 (1978), for the following rule: "It is well settled that where the prosecution substantiates its case by demonstrating a physical condition of the complainant from which the jury might infer the occurrence of a sexual act, the defendant must be permitted to meet that evidence with proof of the complainant's prior sexual activity tending to show that another person might have been responsible for her condition."

Here, there is no indication that the prosecution offered evidence of AA's emotional distress as evidence of a "physical condition" or "disease" that constituted corroborating evidence from which the jury could infer that a sexual act occurred, nor was such evidence necessary considering the charged acts. Rather, considering the testimony as a whole, it is clear that AA's testimony about her mental state was elicited in conjunction with her description of when and why she ultimately revealed the sexual abuse to a teacher.[5] Thus, the trial court did not abuse its discretion in excluding the evidence.

---

[5] Compare *People v Shaw*, 315 Mich App 668, 680; 892 NW2d 15 (2016) ("The rape-shield law does not prohibit defense counsel from introducing 'specific instances of sexual activity . . . to show the origin of a physical condition *when evidence of that condition is offered by the*

## IV. SENTENCING RANGE

Next, defendant argues that he was sentenced in violation of the Sixth Amendment principles discussed in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because the trial court used facts neither admitted by defendant nor found by a jury beyond a reasonable doubt to score offense variable ("OV") 4, OV 8, and OV 10. We disagree.

### A. STANDARD OF REVIEW

Whether a defendant was sentenced in violation of the Sixth Amendment is a question of constitutional law that we review *de novo*. *Id.* at 373.

### B. ANALYSIS

In *Lockridge*, the Michigan Supreme Court held that Michigan's sentencing scheme violated a defendant's Sixth Amendment right to a jury trial because it required "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase[d] the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*."[6] *Id.* at 364. In order to remedy the constitutional violation, the Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id.* at 364.

Defendant was sentenced approximately five months after *Lockridge* was decided. Thus, when defendant was sentenced, the sentencing guidelines were advisory, rather than mandatory. *Id.* at 399. As a result, the trial court's scoring of defendant's offense variables on the basis of facts neither admitted by defendant nor found by a jury beyond a reasonable doubt did not violate the Sixth Amendment. See *Lockridge*, 498 Mich at 392 ("Because sentencing courts will hereafter not be bound by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion. Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence."); *People v Biddles*, 316 Mich App 148, 158; ___ NW2d ___ (2016) ("The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself[.] [I]t was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding."); *id.* at 159 ("[J]udicial fact-finding is proper, as long as the guidelines are advisory only.").

---

*prosecution to prove one of the elements of the crime charged* provided the inflammatory or prejudicial nature of the rebuttal evidence does not outweigh its probative value.' "), quoting *Mikula*, 84 Mich App at 115 (emphasis added; omission in original). This is not the case here.

[6] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

Thus, the trial court's scoring of the OVs did not violate defendant's constitutional rights.[7]

## V. RIGHT TO REMAIN SILENT

Lastly, defendant contends that his constitutional right to remain silent was violated when Detective Surman stated that he was not provided the passcodes to defendant's iPhone and iPad, and that the trial court erred in denying defendant's request for a mistrial on that basis. We disagree.

## A. STANDARD OF REVIEW

"Constitutional questions are reviewed de novo." *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). However, we review for an abuse of discretion a trial court's decision to deny a motion for a mistrial. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). Prejudice must be shown for reversal to be warranted, and "[t]he trial court's ruling must be so grossly in error as to deprive the defendant of a fair trial or amount to a miscarriage of justice." *People v Wells*, 238 Mich App 383, 390; 605 NW2d 374 (1999). Moreover, "[a] mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992), citing *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). "[A]n unresponsive, volunteered answer to a proper question is not cause for granting a mistrial." *Lumsden*, 168 Mich App at 299.

## B. ANALYSIS

In general, if a defendant invokes his right to remain silent after he is arrested and provided *Miranda*[8] warnings, that silence is constitutionally protected and cannot be used against him. *Shafier*, 483 Mich at 212-214; see also *Wainwright v Greenfield*, 474 US 284, 290-291; 106 S Ct 634; 88 L Ed 2d 623 (1986); *Doyle v Ohio*, 426 US 610, 616-620; 96 S Ct 2240; 49 L Ed 2d 91 (1976). Thus, evidence of a defendant's post-arrest, post-*Miranda* silence cannot be

---

[7] Defendant briefly states at the end of his discussion of this issue that his current sentence is disproportionate. We deem this claim abandoned because defendant failed to raise this issue in his statement of the questions of presented, MCR 7.212(C)(5); *People v Unger (On Remand)*, 278 Mich App 210, 262; 749 NW2d 272 (2008), and he failed to provide any meaningful argument explaining why his sentence is disproportionate, other than his discussion of the meritless *Lockridge*-related claim previously discussed, see *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."); *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

[8] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

used as substantive evidence or impeachment, and a prosecutor's reference at trial to that silence violates the defendant's due process rights under the Fourteenth Amendment. *Shafier*, 483 Mich at 212-214. However, a defendant's pre-arrest silence is not entitled to the same protection. *Id*. at 213 n 8; *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004); *People v Schollaert*, 194 Mich App 158, 166-167; 486 NW2d 312 (1992). Additionally, in *Shafier*, 483 Mich at 214-215, the Michigan Supreme Court explained that a reference to post-arrest, post-*Miranda* silence does not necessarily violate a defendant's constitutional rights under some circumstances:

> In general, any reference to a defendant's post-arrest, post-*Miranda* silence is prohibited, but in some circumstances a single reference to a defendant's silence may not amount to a violation of *Doyle* if the reference is so minimal that "silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . ." *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987). See also *People v Dennis*, 464 Mich 567, 577-580; 628 NW2d 502 (2001). For example, in *Greer*, there was no *Doyle* violation where the defense counsel immediately objected to a question by the prosecution about defendant's post-arrest, post-*Miranda* silence, and the trial court twice gave a curative instruction to the jury. *Greer*, 483 US at 759, 764-765. [Footnote omitted.]

Here, it is not apparent that Detective Surman's response necessarily constituted a comment on defendant's silence, especially given the context of the detective's testimony. Further, the record does not indicate whether any refusal by defendant to provide the passcodes occurred after his arrest and after he received *Miranda* warnings. If defendant's refusal occurred before his arrest and before he received *Miranda* warnings, the record includes no evidence of any error. See *Shafier*, 483 Mich at 213 n 8; *Solmonson*, 261 Mich App at 664-665; *Schollaert*, 194 Mich App at 166-167.

Nevertheless, even if we assume that defendant's refusal to provide the passcodes occurred after his arrest and after he received *Miranda* warnings, and the detective's testimony constituted a comment on defendant's silence, the statement did not rise to the level of a constitutional error. Like the prosecutor in *Dennis*, 464 Mich at 577, the prosecutor in this case inadvertently elicited unresponsive testimony that implicitly indicated that defendant refused to provide the passcodes. Unlike the repeated references at issue in *Shafier*, Detective Surman's brief response "was so minimal that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference.' " *Shafier*, 483 Mich at 218, quoting *Greer*, 483 US at 764-765. Defense counsel immediately objected to Detective Surman's testimony that he was not provided with the passcodes for defendant's devices, and the trial court instructed the jury that the only information that it should take from the detective's answer was that he was not able to access defendant's devices. The prosecutor did not refer to the testimony during her closing arguments or connect the testimony to defendant's guilt in any way. Furthermore, Detective Surman's response was unsolicited and did not reveal any new information about defendant's guilt or innocence. *People v Taylor,* 245 Mich App 293, 304; 628 NW2d 55 (2001) (noting that "the arresting officer's testimony regarding [the] defendant's silence was unsolicited and provided no unique information regarding [the] defendant's guilt or innocence").

Under these circumstances, we conclude that no error resulted from the admission of Detective Surman's testimony. However, even if a constitutional error did result, it was surely harmless given the brevity and isolation of the statement and the trial court's curative instruction. See *People v Dendel (On Second Remand)*, 289 Mich App 445, 475-476; 797 NW2d 645 (2010) (explaining the harmless error standard for constitutional errors). Thus, the trial court did not abuse its discretion when it denied defendant's motion for a mistrial. *Dennis*, 464 Mich at 572.

## VI. CONCLUSION

Defendant has failed to establish that any of his claims warrant relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle