# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM GALE MELENDEZ,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No. 332106
Wayne Circuit Court
LC No. 15-004615-01-FH

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), and misconduct in office, MCL 750.505. The trial court sentenced defendant to 13 months to 10 years in prison for the assault conviction, and to time served for the misconduct in office conviction. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant is a former city of Inkster police officer. The jury convicted defendant of assaulting Floyd Dent by using excessive force in the course of arresting Dent after a traffic stop.

On the night of January 28, 2015, defendant and his partner, John Zieleniewski, a volunteer auxiliary officer, decided to stop Dent's vehicle for failing to make a complete stop at a stop sign. After Zieleniewski forcibly removed Dent from his vehicle, defendant struck Dent in the head multiple times and put his arm around Dent's throat or head while Zieleniewski tried to handcuff Dent. Additional officers responded to defendant's call for assistance. One of the responding officers engaged his Taser stun gun against Dent four times.

After Dent was fully handcuffed, he was brought to the police station before he was transported to Garden City Hospital for treatment of head injuries. An initial CT scan showed "medial blowout fracture of the right orbit, and a possible subarachnoid hemorrhage." In laymen's terms, Dent had suffered a fracture of the bone around the right eye and showed signs of bleeding in his brain.

Dent's arrest was recorded by a dashboard camera ("dashcam video") on defendant's patrol vehicle, and a recording of the incident became widely available to the public. After an investigation, defendant was charged with assault by strangulation, MCL 750.84(1)(b), assault

-1-

with intent to do great bodily harm less than murder, and misconduct in office. The defense theory at trial was that defendant's conduct during the arrest was reasonable because Dent aggressively resisted arrest. The jury acquitted defendant of assault by strangulation, but convicted him of the remaining two charges.

## II. FIFTH AMENDMENT VIOLATION

On appeal, defendant first argues that he was denied a fair trial when the prosecutor introduced evidence that defendant declined to be interviewed pursuant to an investigative subpoena. We disagree.

At defendant's trial, State Police Lieutenant Twana Powell, the officer in charge of investigating the incident, testified that she had interviewed each of the officers present during Dent's arrest pursuant to investigative subpoenas. The prosecutor asked her if she spoke to "every officer who was identified as being at the scene, other than [defendant]" and she responded, "Yes." The prosecutor then asked Powell if defendant had been "invited to come and be interviewed." Defendant objected to the prosecutor's question, but the trial court overruled the objection. The prosecutor continued the questioning as follows:

> [*The Prosecutor*]: Was [defendant] invited to come and speak with you?
>
> [*Powell*]: Yes.
>
> [*The Prosecutor*]: And he declined.
>
> [*Powell*]: Yes.
>
> [*The Prosecutor*]: Which is his right, correct?
>
> [*Powell*]: Exactly.

The trial court briefly intervened, questioning Powell as follows:

> *The Court*: And when you say "his right," his constitutional right, is that correct?
>
> [*Powell*]: Yes, his constitutional right to remain silent.
>
> *The Court*: Okay, very good. And let me ask this question. When you invited him there, did you know if—did he have a lawyer, at that point?
>
> [*Powell*]: Um, yes, because when the—when he was—when it was declined to come, it was through an attorney.
>
> *The Court*: Okay, very good.

Defendant argues that this line of questioning impermissibly infringed on his Fifth Amendment right to remain silent and avoid compelled self-incrimination. Defendant frames his Fifth Amendment argument as one involving claims of both evidentiary error and prosecutorial

error.  However, the admission of Powell's testimony does not involve an issue of prosecutorial error because the trial court addressed an objection to the testimony before permitting its admission.  "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence."  *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).  The admissibility of Powell's testimony is properly characterized as an evidentiary issue.  We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *People v Bass*, 317 Mich App 241, 255; 893 NW2d 140 (2016).  The trial court abuses its discretion if it selects an outcome that falls outside the range of reasonable and principled outcomes.  *Id*. at 256.  This Court reviews de novo issues of law and constitutional issues underlying evidentiary rulings.  *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).  "We review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt."  *People v Dendel (On Second Remand)*, 289 Mich App 445, 475; 797 NW2d 645 (2010).

"The United States Constitution guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.' "  *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009), quoting US Const, Am V.  The constitutional privilege against self-incrimination and the right of due process restrict the use of a defendant's silence in a criminal trial.  *People v Dennis*, 464 Mich 567, 573-574; 628 NW2d 502 (2001).  "[I]n general, prosecutorial references to a defendant's post-arrest, post-*Miranda*[1] silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution."  *Shafier*, 483 Mich at 212-213.  "[W]here a defendant's silence is attributable to an invocation of his Fifth Amendment right or a reliance on the *Miranda* warnings, the use of his silence is error."  *People v Schollaert*, 194 Mich App 158, 163; 486 NW2d 312 (1992).

The prosecutor argues that defendant could not have been relying on *Miranda* warnings when he declined to participate in the investigative subpoena interview, and his silence was not constitutionally protected.  However, the question whether defendant received his *Miranda* rights before declining to participate in an interview is not necessarily dispositive.  We must consider whether, under the circumstances, defendant's silence is properly attributed to his invocation of the Fifth Amendment privilege against self-incrimination.

Defendant asserted his right to silence in response to an investigative subpoena.  An investigative subpoena is a creature of statute, authorized by the Legislature to enable a prosecuting attorney to petition the court for an order to appear during the investigation of a felony.  MCL 767A.2(1).  "A judge may authorize" the prosecutor to issue a subpoena if the prosecutor properly petitions the court under MCL 767A.2, "the judge determines there is reasonable cause to believe a felony has been committed," and "the judge determines there is reasonable cause to believe that . . . [t]he person who is the subject of the investigative subpoena may have knowledge regarding the commission of the felony."  MCL 767A.3(1).  Under MCL 767A.5(1), "[a] person properly served with an investigative subpoena . . . *shall appear before the prosecuting attorney and answer questions* concerning the felony being investigated . . . ."  (Emphasis added).  Failure to comply with an investigative subpoena can result in criminal

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

sanctions. See MCL 767A.9(2). Participation in an interrogation pursuant to an investigative subpoena is therefore essentially compulsory, and can clearly implicate a defendant's Fifth Amendment right against self-incrimination.

Although the investigative subpoena statutes do not recognize a right to absolute silence, MCL 767A.5(5) and MCL 767A.6(5) recognize the right to refrain from incriminating disclosures. Additionally, MCL 767A.5(5) provides that "[t]he prosecuting attorney shall inform the person of his or her constitutional rights regarding compulsory self-incrimination before asking any questions under an investigative subpoena."

The distinctions between custodial interrogation and interrogation pursuant to an investigative subpoena are differences of degree, not kind, because both procedures are subject to the protection of the Fifth Amendment right against self-incrimination. In *People v Seals*, 285 Mich App 1; 776 NW2d 314 (2009), this Court held that the trial court did not err in allowing the prosecutor to introduce statements that the defendant made pursuant to an investigative subpoena in order to impeach exculpatory statements defendant made at trial. *Id*. at 4-5. The defendant argued on appeal that his prior testimony was involuntary and that "its use against him for any purpose violated his right against compelled self-incrimination." *Id*. at 6. This Court observed that the defendant had been informed of his constitutional rights pursuant to MCL 767A.5(5), and admission of statements made thereafter did not violate the defendant's Fifth Amendment right against self-incrimination. *Seals*, 285 Mich App at 7-8. However, this Court acknowledged that the Fifth Amendment's protections apply to an interrogation pursuant to investigative subpoena:

> With respect to the Fifth Amendment, the privilege against compelled self-incrimination can be asserted in any proceeding and it protects against any disclosures that a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used (i.e., that which would furnish a link in the chain of evidence needed to prosecute the claimant of the privilege). As pointed out by defendant, immunity from use and derivative use of compelled testimony is coextensive with the scope of the privilege against self-incrimination:

> The [Fifth Amendment] privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.' " Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness. [*Id*. at 9 (citations omitted).]

The *Seals* Court's reasoning is consistent with the longstanding principle that while a defendant's silence may be admitted to impeach contradictory trial testimony, a defendant's intentional invocation of his Fifth Amendment right to remain silent may not be used against him as substantive evidence of guilt. See *People v Clary*, 494 Mich 260, 265-266; 833 NW2d 308 (2013). The principle of law prohibiting a prosecutor from using a defendant's exercise of his

right to silence during custodial interrogation as substantive evidence of guilt also prohibits a prosecutor from using a defendant's exercise of his right against self-incrimination in response to an investigative subpoena.

The record in this case demonstrates that defendant's refusal of the investigative subpoena interview was attributable to the invocation of his Fifth Amendment privilege against compelled self-incrimination. In fact, Powell specifically testified that defendant relied on his constitutional rights to decline the interview. The prosecutor's elicitation of testimony regarding defendant's silence was not for impeachment purposes, as defendant did not testify at trial. Under these circumstances, the trial court abused its discretion when it allowed the prosecutor to question Powell about defendant's refusal to participate in the investigative interview.

However, reversal on this ground is not required. A preserved claim of constitutional error is deemed harmless when this Court can determine "beyond a reasonable doubt that there is no reasonable possibility that the evidence complained of might have contributed to the conviction." *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994) (quotation marks and citations omitted). Powell's statement that defendant "declined" the "invitation" for an "interview" was prejudicial to the extent that it insinuated that defendant was concerned that he could not defend his actions. Given the circumstances of this case, however, we are persuaded beyond a reasonable doubt that there is no reasonable possibility that such an insinuation contributed to defendant's convictions.

The jury's task was to determine whether defendant's use of force was reasonable under the circumstances in light of Dent's conduct or efforts to resist an arrest. The jury's decision depended not only on its evaluation of the witnesses' credibility, but on its own observations of the video. Three eyewitnesses, Zieleniewski, Officer Shawn Kritzer, and Officer Phillip Randazzo, testified that Dent was actively resisting arrest until Randazzo seized and handcuffed Dent's right hand. Additionally, both Inkster Chief of Police Vicki Yost and Aaron Westrick, Ph.D., an expert in the use of force by police officers, testified that they considered defendant's conduct during the arrest "reasonable." The jury evidently found their testimony credible with respect to whether defendant held Dent in a headlock or a chokehold, because they acquitted defendant of assault by strangulation. But the jury was presented with undisputed evidence that defendant struck Dent's head 16 times, which was corroborated by objective medical evidence of Dent's head injury. Because the jury had the benefit of the dashcam video of the incident, as well as substantial eyewitness and expert testimony describing and interpreting the circumstances and events depicted in the video, there was no reason for the jury to rely on defendant's decision to decline an interview to determine defendant's guilt or innocence of the charges, and thus no reasonable possibility that the objectionable testimony made a difference between acquitting defendant of the strangulation charge and acquitting him of all three charges. Furthermore, when the objectionable testimony was presented, the jury was clearly informed that defendant had a constitutional right to decline the investigative subpoena interview, which minimized any potential that the jury would consider defendant's silence for an improper purpose. Under these circumstances, we conclude that the erroneous admission of testimony regarding defendant's decision to decline an investigative subpoena interview was harmless beyond a reasonable doubt.

### III. EYEWITNESS'S HISTORY OF RACIAL SLURS

Defendant next argues that the trial court abused its discretion by admitting evidence of Zieleniewski's history of using racial slurs. We disagree.

Zieleniewski's testimony substantially supported the defense theory that defendant's use of force against Dent was reasonable. However, the prosecutor argued at trial that Zieleniewski was biased in favor of defendant and against Dent, who was African-American. During the prosecutor's examination, Zieleniewski admitted that he had called Dent a dangerous criminal, and that he might have called him a "piece of sh*t." The prosecutor also asked Zieleniewski, "You don't like black people, do you?" Defendant objected on the ground that "the prosecutor is trying to interject race into this trial." The prosecutor argued that the question was relevant to Zieleniewski's bias against Dent. The trial court asked if the prosecutor had "some type of offer of proof that you have to substantiate your question?" The prosecutor replied that Zieleniewski had sent several text messages that included "numerous indications or racial epithets and joking about beating up black people in Inkster." The trial court allowed the prosecutor to impeach Zieleniewski with a sample of the text messages containing racial slurs. Immediately after Zieleniewski's testimony, the trial court instructed the jury as follows:

> I just want to indicate, for the record, that statements have been made—have been admitted to show bias against a witness in this matter.
>
> This statement is offered as evidence only against the witness, to show his bias in his testimony. It cannot be used against the defendant, and you must not do so. You must only consider the statement in terms of the credibility of the witness, and for no other reason.

In closing argument, the prosecutor argued that Zieleniewski's testimony, favorable to defendant, was not credible because Zieleniewski was biased against black persons. Thereafter, during final instructions, the trial court repeated its earlier instruction, reminding the jurors that they should only consider the text message statements in terms of Zieleniewski's credibility.

Evidence is generally admissible if it is relevant, MRE 402, i.e., it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," MRE 401. "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 611(c). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Although "this Court abhors the injection of racial or ethnic remarks into any trial because it may arouse the prejudice of jurors against a defendant and, hence, lead to a decision based on prejudice rather than on the guilt or innocence of the accused," *People v Bahoda*, 448 Mich 261, 266; 531 NW2d 659 (1995), "[t]he credibility of a witness is always an appropriate subject for the jury's consideration" and "[e]vidence of a witness' bias or interest in a case is highly relevant to credibility," *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995).

In the instant case, the eyewitnesses' perceptions and explanations of the dashcam video were critical to the jury's determination of whether defendant's conduct toward Dent was reasonable or excessive. Although Zieleniewski was called as a prosecution witness, his testimony generally favored defendant. The prosecutor argued that Zieleniewski was "a partisan, a cheerleader, a [confidante] of the defendant." Evidence that Zieleniewski was biased against Dent, as well as in favor of defendant, was highly relevant to his credibility.

Defendant argues that the prosecutor placed undue emphasis on Zieleniewski's bias by eliciting testimony that he used the word "ni**er" several times in text messages sent in March and April 2015. The extent to which the prosecutor could pursue this line of argument regarding Zieleniewski's credibility, and whether the risk of unfair prejudice outweighed the probative value of the evidence, were matters within the trial court's sound discretion. Given the importance of Zieleniewski's credibility as an eyewitness, we are not persuaded that the trial court abused its discretion when it permitted the prosecution to engage in limited questioning of Zieleniewski about his history of using racial slurs. Additionally, the trial court twice instructed the jury that evidence of Zieleniewski's racial statements was admissible only to show his bias and could not be considered against defendant. The jury is presumed to have followed its instructions, and the trial court's curative instruction was sufficient to alleviate any prejudice to defendant that might have resulted from the prosecutor's elicitation of testimony regarding racial bias. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## IV. IMPROPER VOIR DIRE

Defendant next argues that juror misconduct denied him a fair trial, and that the trial court erred by failing to adequately investigate the matter. We disagree.

Jury selection for defendant's trial took place over two days. Because of the substantial media coverage the case had received, the trial court decided to seat 16 jurors and allow each party 16 peremptory challenges. At the start of the second day, the prosecutor notified the trial court that his office had received information that Juror Five had reported seeing the dashcam video and stated that she was unable to be fair to defendant. The trial court thereafter questioned Juror Five regarding her communications with other jurors. She indicated that she had spoken to Juror One. The trial court questioned Juror One, who denied hearing Juror Five talk about her inability to be fair and impartial. Defendant did not request that the trial court further inquire of the other prospective jurors. The parties continued with jury selection. When a jury was selected, defense counsel expressed his satisfaction with the jury as seated, with several peremptory challenges still remaining. Defendant now argues that the trial court's investigation of Juror Five's misconduct was inadequate, and that the trial court should have questioned more extensively the other jurors to determine if they had been influenced by her remarks.

The trial court's administration of jury voir dire is reviewed for an abuse of discretion. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). Unpreserved issues regarding jury selection are reviewed for plain error affecting the defendant's substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). However, when an error is waived, the error is extinguished and appellate review is foreclosed. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). In this case, defendant did not challenge the adequacy of the trial court's inquiry, or ask that additional jurors be questioned. Indeed, he twice indicated his

satisfaction with the jury as seated, declining to exercise his remaining peremptory challenges, and affirmatively agreed when the judge asked if they had a jury. The totality of the circumstances establishes that defense counsel unequivocally agreed to the jury as finally composed. See *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011) (defense counsel waived a claim of instructional error where, although counsel did not expressly state that he "approved" the court's jury instructions, "[c]ounsel's statements [that he had no objections to the court's instructions] were express and unequivocal indications that he approved of the instructions"). Defendant therefore waived any issue with the jury selection process, *People v Clark*, 243 Mich App 424, 426; 622 NW2d 344 (2000), and there is no error for this Court to review.

## V. PROSECUTORIAL ERROR

Defendant next argues that a new trial is required because the prosecutor improperly denigrated defense counsel during closing argument. We disagree.

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). The prosecutor is permitted "to argue from the facts that defendant or defendant's witnesses were unworthy of belief." *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Id*. at 66. "But the prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *Fyda*, 288 Mich App at 461. "This prohibition is based on the negative effect such an argument has on the presumption of innocence." *Id*. The test of prosecutorial error is whether the defendant was denied a fair and impartial trial, and it is the defendant's burden to demonstrate that the prosecutorial error resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. at 135.

Defendant broadly suggests that the prosecutor committed reversible error when he told the jury that defense counsel was making up facts and deliberately attempting to mislead the jury. However, defendant failed to preserve his claims of error with contemporaneous and specific objections at trial. See *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (explaining that review of alleged prosecutorial error is precluded without a timely and specific objection). Further, although defendant has provided record citations for allegedly improper comments, he has failed to direct this Court's attention to any specific statements made by the prosecutor during closing argument or rebuttal that would support his claim of error, or to provide any context for his argument that the prosecutor's statements were improper. A party cannot simply announce a position and then leave it to this Court to discover and rationalize the basis for his claims. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). An appellant is required to argue the merits of each issue, *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012), and to support factual statements with specific references to the record, *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Given defendant's failure to comply with the briefing requirements, we could consider defendant's argument waived.

Further, a review of the cited portions of the record reveals no impropriety in the prosecutor's rebuttal argument. The prosecutor's statements that there were no witnesses who "gave [defense counsel] the record he wanted to argue from," that defense counsel had attacked witnesses who gave unfavorable testimony, and that defense counsel had attacked Dent's character were legitimate arguments regarding defense counsel's overt conduct and were grounded in available evidence. The prosecutor's argument directly refuted the theory proposed by defense counsel, but the prosecutor did not attack defense counsel's character. Additionally, "[a] prosecutor may fairly respond to an issue raised by the defendant." *Brown*, 279 Mich App at 135. The prosecutor was permitted to respond to defense counsel's closing argument, in which defense counsel implied that the prosecution's witnesses had been bribed for favorable testimony, suggested that the prosecutor had failed to prove facts that the prosecutor was not required to prove, and asserted facts that were arguably unsupported, and was not limited to the blandest possible terms. In context, the prosecutor's rebuttal statements were not improper.

Next, defendant argues that he was denied a fair trial when the prosecutor improperly shifted the burden of proof onto defendant during his rebuttal and commented on defendant's decision not to testify. Again, we disagree.

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *Fyda*, 288 Mich App at 463-464. However, a prosecutor's proper commentary on the weaknesses of a defense theory does not shift the burden of proof. *Id.* at 464-465. Otherwise improper remarks may not rise to the level of error requiring reversal if the remarks were responsive to defense counsel's argument. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

During closing argument, the prosecutor stated:

> There were three people there at the scene that day when these events took place. One was Mr. Dent, you heard from him. The second was Mr. Zieleniewski; you heard from him. And [defendant] has chosen not to testify. And it's his absolute right, you can't hold that against him, but that's what you're left with in terms of the testimony.

Defendant argues that the prosecutor improperly highlighted defendant's decision not to testify and impliedly shifted the burden to defendant to prove his own innocence. However, while we agree that this statement indirectly implicated defendant's decision not to testify, we do not agree that it shifted the burden of proof or otherwise deprived defendant of a fair and impartial trial. The prosecutor was permitted to draw inferences from the available evidence, which includes any lack of evidence to support the defense theory and any conflicts in witness testimony. In context, the statement defendant challenges here simply highlighted the credibility contest between Dent and Zieleniewski—the only two witnesses to testify with regard to defense counsel's claim that Dent bit defendant during the arrest. The prosecutor did not suggest that defendant was required to provide corroboration, or improperly shift the burden of proof onto defendant. The prosecutor's statement was not improper.

For the same reason, defendant also challenges the following statement made by the prosecutor in closing argument:

> The only person who's not lyin' to you, if you buy this theory, is [defense counsel]. If he were a witness, I'd love to cross-examine him; but I can't, he's not a witness.

This statement was not even arguably directed at defendant's decision not to testify. Rather, it was responsive to defense counsel's argument that the trial witnesses were not credible. The statement was therefore not improper.

Defendant also argues that the prosecutor deprived him of a fair and impartial trial when he suggested that the defense theory was supported by nothing but hearsay evidence. In his closing argument, defense counsel told the jury that the evidence proved that defendant's actions during Dent's arrest were reasonable because Dent had fought defendant and bit him while resisting arrest. No one that testified at trial said they had seen Dent bite defendant, and Dent flatly denied the allegation. However, during his examination of Kritzer, defense counsel asked whether defendant's delivery of 16 blows to Dent's head could be justified and Kritzer responded, "If he was bitin' him." Defense counsel also elicited a statement from Kritzer that Kritzer had observed a red, oval-shaped mark, consistent with a bite mark, on defendant's arm after the incident. Kritzer's testimony was later impeached with testimony from Kritzer's interview in response to investigative subpoena, during which Kritzer had stated that he had only seen a "small reddish mark" on defendant's arm.

In closing, the prosecutor suggested that the bite never happened, and that there was no evidence to support the defense theory that Dent bit defendant. The prosecutor properly pointed out that defendant was not depicted examining or attempting to clean any alleged injury in the dashcam video. Then, in arguing against defendant's reliance on hearsay evidence, the prosecutor made the following specific remarks regarding defense counsel's conduct:

> I don't see a fight [on the dashcam]. If it was a fight, it wasn't much of one. But [defense counsel uses] descriptors.
>
> What else might 'ya do?
>
> You might try to get the defendant's version of the facts out without exposing him to cross-examination. He should—

Defense counsel immediately objected to these statements, arguing that they involved improper commentary on defendant's exercise of his right not to testify. The prosecutor acknowledged that defendant "has every right not to testify," but argued that testimony regarding defendant's version of the incident was hearsay, unless defendant was subject to cross-examination. The trial court overruled defense counsel's objection and the prosecutor continued his argument by addressing whether there was evidence to support the defense theory that Dent bit defendant during the incident. The prosecutor stated, "He tried, and he tried, and he tried to get it in. And he finally did. But what did he get in? He got in that he bit him."

Although the prosecutor indirectly implicated defendant's decision not to testify, defendant was not thereby deprived of a fair and impartial trial. The prosecutor's incomplete statement, "You might try to get the defendant's version of the facts out without exposing him to cross-examination," merely suggested that defendant's biting explanation was weak because it was supported with only hearsay and defense counsel's leading questions. The prosecutor did not imply that defendant had to prove his innocence, or improperly shift the burden to defendant.

Furthermore, to the extent that any of the prosecutor's statements could be considered improper, the trial court instructed the jury that defendant had an absolute right not to testify and that defendant was not required to prove anything. These instructions, which the jury is presumed to have followed, were sufficient to protect defendant's rights and cure any error. *Abraham*, 256 Mich App at 278-279.

## VI. EXCLUSION OF IMPEACHMENT EVIDENCE

Finally, defendant argues that the trial court erred when it refused to allow him to recall Dr. Farhan Azeez, an emergency medicine resident at Garden City Hospital, to ask him if Dent told emergency room personnel that he was under the influence of cocaine. We disagree.

The record indicates that during a conference in chambers held before the prosecutor called the final rebuttal witness, defense counsel requested an opportunity to recall Dr. Azeez, the emergency room physician who treated Dent immediately after the incident, in order to impeach Dent's "den[ial] that he told anybody at the hospital that he used cocaine." The trial court denied defense counsel's request, later stating on the record that the jury could review Dent's emergency room records, which had been admitted as evidence during trial. The trial court's specific reason for denying defense counsel's request to recall Dr. Azeez is not clear. However, we would note that defense counsel's argument in support of the recall is meritless on its face because it is inconsistent with the facts in the record. Defendant argues that Dent's statement was admissible to impeach Dent's testimony that he did not recall saying that he was under the influence of cocaine. But Dent never made such a statement. Dent thrice denied that he was "high on cocaine" during the arrest or that he had ingested cocaine at any time on the day of the incident. However, neither the prosecutor nor defense counsel ever asked Dent if he had told anyone in the emergency room whether he had ingested cocaine that day, and Dent did not mention any such interaction. Without a potentially inconsistent statement from Dent to impeach, there was no reason for defense counsel to recall Dr. Azeez.

We also reject defendant's argument that the trial court's decision to deny the request to recall Dr. Azeez deprived him of a meaningful defense. Defendant was afforded ample opportunity to challenge the prosecutor's evidence that Dent was not under the influence of cocaine, and recalling Dr. Azeez to impeach Dent with a statement that Dent did not in fact make would have done nothing to enhance the defense theory. Regardless, the pertinent issue was not whether Dent was under the influence of cocaine, but whether defendant's conduct toward Dent was reasonable in light of Dent's conduct during the arrest. Defendant was not denied the opportunity to present a defense.

Affirmed.

                                        /s/ Kathleen Jansen
                                        /s/ Mark J. Cavanagh
                                        /s/ Michael F. Gadola