*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS ANDREW PERNELL,

        Defendant-Appellant.

UNPUBLISHED
December 06, 2024
12:00 PM

No. 365563
Wayne Circuit Court
LC No. 21-005538-01-FC

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of second-degree murder, MCL 750.317,[1] and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for which he was sentenced as a fourth-offense habitual offender, MCL 769.12, to 50 to 90 years' imprisonment for the murder conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the April 21, 2021 fatal shooting of his cousin, Allen Wallace, in defendant's mother's house in Highland Park. The prosecutor theorized that defendant intentionally killed Wallace because he was angry that Wallace disrespected his wife, Erika Pernell. There was evidence that Wallace and Erika engaged in a verbal altercation approximately two hours before defendant shot Wallace. At some point, Erika called defendant and informed him about the quarrel. Because defendant planned to drive Wallace's sister, Erica Cain, to Action Impact (a gun store) to pick up her preordered firearm, she was with him when he made a detour to the Highland Park house to defuse the situation. Defendant was agitated, drove erratically, including speeding and disregarding traffic signals, and parked on the sidewalk. Defendant went inside the house, but Wallace was not there. When defendant returned to the car, he told Cain that

---

[1] The jury found defendant guilty of second-degree murder as a lesser offense to an original charge of first-degree premeditated murder, MCL 750.316(1)(a).

he was "about to go get [his] chopper because ain't no n***a gone disrespect my wife." Cain did not believe that defendant would harm Wallace, but she did send a different brother the following text message: "[T]his n***a tripping. He just said he about to go get a gun like he, like he trying to kill bro or something."

Erika, who was sitting in her truck in the driveway, joined defendant and Cain in defendant's car. As defendant drove to Action Impact, Erika informed defendant that Wallace threatened to pull a gun on her. Erika attempted to purchase a gun while at Action Impact, at defendant's suggestion, but she was denied. Subsequently, the group briefly returned to defendant's house. When defendant and Erika left, defendant's hand was in his righthand pocket, and Erika was in the driver's seat. Defendant and Erika returned to the Highland Park house. Defendant walked inside the house, carrying a gun in his righthand pocket, and he kept his hand in his pocket during the entire episode.

Video footage extracted from a surveillance camera in the kitchen captured defendant rapidly and aggressively approach Wallace, who was alone, and confront him. At one point, Wallace backed up and walked around defendant, and defendant followed him and again walked up to him. Ultimately, defendant raised his arm and with his hand still concealed by his jacket, pointed at Wallace and shot Wallace once in the chest. There was evidence that Wallace had a gun on his person, but Wallace never raised it. After the shooting, defendant called 911, using a false name, left the house when he heard sirens, and lied to the police when he was arrested approximately three months later.

In turn, defendant testified in his own defense, asserting that he acted in self-defense when he shot Wallace. Defendant testified that (1) he was armed because he always carried a gun for protection; (2) he did not plan to shoot Wallace; (3) he shot Wallace only after Wallace reached for a gun; and that (4) he thought he shot Wallace in the shoulder. The defense further supported defendant's self-defense claim with witness testimony that Wallace was known to carry a gun, had drawn a gun on other family members, and had recently told a family member that he wanted to shoot defendant. The defense urged the jury to find that defendant "had no choice . . . but to shoot Mr. Wallace to prevent Mr. Wallace from shooting him."

The jury found defendant guilty of second-degree murder as a lesser offense to an original charge of first-degree premeditated murder, and felony-firearm, thereby rejecting defendant's claim of self-defense.

## II. SUFFICIENCY OF THE EVIDENCE–SELF-DEFENSE

In his first claim, defendant argues that the prosecution failed to disprove beyond a reasonable doubt that defendant did not act in self-defense, and, therefore, his second-degree murder conviction cannot stand. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735;

-2-

929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of second-degree murder have traditionally been described as "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice[2], and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). This Court recently held "that the often-recited fourth element of second-degree murder, 'without justification or excuse,' " is not an element of the offense of second-degree murder." *People v Spears (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357848); slip op at 10, oral argument gtd on the application ___ Mich ___; 6 NW3d 396 (2024). The Court's "conclusion in this regard does not necessarily diminish the importance of the 'without justification or excuse' aspect of second-degree murder." *Id*. at ___; slip op at 10 n 12.

In this case, defendant's sufficiency challenge is focused on the prosecutor's failure to disprove beyond a reasonable doubt that defendant acted in lawful self-defense. Self-defense is an affirmative defense that, if established, will justify otherwise punishable criminal conduct. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). The Self-Defense Act (SDA), MCL 780.971 *et seq*., codified the circumstances in which a person may use self-defense without having the duty to retreat. *Dupree* 486 Mich at 708; *People v Leffew* 508 Mich 625, 641; 975 NW2d 896 (2022). By its express terms, the SDA did "not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974. At common law, a defendant acts in justifiable self-felony "if the defendant honestly and reasonably believes his life is in imminent danger. . . and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Riddle* 467 Mich 116, 127; 649 NW2d 30 (2002); See also, *Dupree* 486 Mich at 707. "[O]nce a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *Dupree*, 486 Mich at 712. "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013).

Defendant introduced the concept of self-defense. Defendant testified that, as he and Wallace were talking, Wallace reached for his gun and pulled it to the top of his pocket. Defendant

---

[2] "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999). "Malice may also be inferred from the use of a deadly weapon." *Id*. "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

asked Wallace twice to put the gun back in his pocket. Defendant then shot Wallace before Wallace could draw his gun and shoot him. Defendant explained that he did not shoot to kill, and thought he shot Wallace in the shoulder. Defendant further explained that he had an honest and reasonable belief that he was in imminent danger on the basis of Wallace's reputation for being violent, brandishing guns, and shooting at family members.

Although there was evidence that could support a self-defense claim, viewed in a light most favorable to the prosecution, there was ample evidence to rebut it. There was evidence that defendant was angry because Wallace disrespected defendant's wife, he went to Wallace's location with a gun in his pocket, and he kept his hand on the gun during the entire episode. Video evidence, which defendant essentially ignores in his analysis, illustrated that, upon entering the kitchen— where Wallace was alone—defendant rapidly and aggressively approached Wallace, and, as plaintiff aptly described, "got in [Wallace's] face" more than once. Defendant acknowledged that, as seen in the video, he followed Wallace after Wallace walked around him to get to the other side of the kitchen. He also acknowledged that, at another point, he "moved into" Wallace. Ultimately, defendant raised his right arm, with his hand still in his pocket, and shot Wallace in the chest. Defendant admitted that, as the video evidence revealed, Wallace never raised his gun.

Further, as indicated, the jury heard defendant's testimony placing into context why he believed that he was in imminent danger even though Wallace did not brandish a weapon. Apart from viewing defendant's bullying type of conduct as captured on video, the jury also heard Cain's testimony that she spent significant time with her family, and she had never heard that Wallace "pull[ed] out a gun" or shot at anyone. The jury also heard defendant's acknowledgment that, despite his claim that he did not shoot to kill, he shot Wallace in the chest from no more than three feet away. In sum, a jury could have rationally inferred from defendant's actions, including his statement to Cain, bringing a deadly weapon to confront Wallace, and shooting Wallace in the chest from a close range, that defendant did not act in justifiable self-defense.

Defendant essentially argues that the evidence was insufficient to establish second-degree murder because the jury should have believed his version of the events, i.e., that he acted in self-defense, and, alternatively, that the jury should have concluded that the evidence supported a verdict of only voluntary manslaughter, not second-degree murder. Defendant's challenges, including what inferences could be drawn from the evidence, are related only to the weight and credibility of the evidence, which were issues for the jury to resolve. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). The jury heard from prosecution eyewitnesses, defense witnesses, and observed video evidence that captured defendant's movements before, during, and after the shooting. For the charged crime of first-degree premeditated murder, the jury was also instructed on the lesser offenses of second-degree murder and voluntary manslaughter, as the defense requested. The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and we will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Further, defendant's reliance on his view of what inferences should be drawn from the evidence disregards that we are required to resolve all conflicts in the evidence in favor of the prosecution, *id.*, that this deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich at 400, and that it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *id.* (quotation marks and citation omitted). Applying these standards,

sufficient evidence was presented to sustain defendant's conviction of second-degree murder beyond a reasonable doubt, and we will not disturb the jury's verdict.

### III. PROSECUTOR'S CONDUCT–PREARREST SILENCE

Next, defendant argues that the prosecutor violated his right of constitutional due process by presenting evidence and argument on his prearrest silence, in violation of the Fifth Amendment. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant did not raise the challenged conduct in the trial court, his claim of prosecutorial misconduct is unpreserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### A. THE FIFTH AMENDMENT

"The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution from commenting on the silence of a defendant who asserts the right." *Jenkins v Anderson*, 447 US 231, 235; 100 S Ct 2124; 65 L Ed 2d 86 (1980). "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013). A "defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda*[3] warnings." *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004). Therefore, "[a] defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda* warnings have been given." *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005). More specifically, if a "defendant's silence or nonresponsive conduct did not occur during a custodial interrogation situation [or] in reliance on the *Miranda* warnings," the silence is "not a constitutionally protected silence." *People v Schollaert*, 194 Mich App 158, 166; 486 NW2d 312 (1992). Thus, a "defendant's constitutional rights [are] not violated when evidence of [such] silence [is] admitted as substantive evidence." *Id*. at 167.

In this case, the prosecutor elicited testimony from the officer in charge that defendant did not contact the police to provide his story, i.e., that he shot Wallace in self-defense, and presented this evidence as part of her closing argument. The detective's testimony and the prosecutor's subsequent remarks referenced only defendant's silence or nonresponsive conduct before any

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

custodial interrogation and before *Miranda* warnings were given. Thus, defendant's silence did not involve an implication of his Fifth Amendment right or reliance on *Miranda* warnings. Because defendant's prearrest and pre-*Miranda* silence was not constitutionally protected, *McGhee*, 268 Mich App at 634, defendant has not shown that the prosecutor violated his constitutional rights. Consequently, defendant has failed to establish a plain error on the basis of the prosecutor's conduct, and he is not entitled to a new trial on this basis. *Carines*, 460 Mich at 763.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In a related claim, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's conduct. Again, we disagree.

Defendant preserved his ineffective-assistance claim by moving to remand for an evidentiary hearing in this Court. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). But, because defendant did not move for a new trial or an evidentiary hearing in the trial court, and this Court denied his motion to remand,[4] review of this ineffective-assistance claim is limited to "errors apparent on the record." *Id*.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *Roscoe*, 303 Mich App at 644. A defendant also has the burden of establishing the factual predicate for an ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

As explained, defendant's prearrest and pre-*Miranda* silence was not constitutionally protected. *McGhee*, 268 Mich App at 634; *Schollaert*, 194 Mich App 166. Therefore, defense counsel's failure to object to the prosecutor's conduct on the basis the prosecutor undermined his right to remain silent was not objectively unreasonable. Failure "to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Consequently, defendant's claim of ineffective assistance of counsel on this basis must fail.

## III. OFFENSE VARIABLE 19

In his last claim, defendant argues that he is entitled to be resentenced because the trial court erroneously scored offense variable (OV) 19 (interference with the administration of justice)

---

[4] *People v Pernell*, unpublished order of the Court of Appeals, entered January 26, 2024 (Docket No. 365563).

of the sentencing guidelines, and that defense counsel was ineffective for failing to object to the scoring of this variable. Again, we disagree.

## A. OV 19

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 19 addresses a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. As applicable to this case, the trial court must assign 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice . . ." MCL 777.49(c). Interfering or attempting to interfere with the administration of justice is broadly interpreted when assessing OV 19. *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). Any acts by a defendant that interfere or attempt to interfere with law enforcement officers and their investigation of a crime may support a score for OV 19. *Id*. In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010).

The facts of the case provided a reasonable basis for the trial court to conclude that defendant interfered in the administration of justice. In challenging the lack of evidence to support the trial court's assessment of points for OV 10, defendant argues that "[t]he record only reveals that [he] called 911 but then walked away from the scene when the officers arrived." However, there was evidence that as defendant was walking near the house, a detective arrived and asked defendant if he "saw anything." Defendant told the detective that there was a scuffle inside the house and someone was shot. Thus, defendant made a statement plainly intended to deceive law enforcement during their investigation. Defendant admitted that he immediately fled from the scene after directing the detective to the house. As this Court observed in *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016), "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." That is what defendant did—deliberately gave the detective misinformation about his knowledge of the incident, and then fled from the crime scene. Consequently, the trial court did not clearly err when it assigned 10 points for OV 19.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel provided ineffective assistance by not only failing to object to the trial court's scoring of OV 19, but approving the 10-point assessment. For the reasons previously discussed, the trial court correctly assessed 10 points for OV 19. Thus, it was objectively reasonable and within the range of reasonable professional conduct to not advance an objection. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Therefore,

defendant has not established a claim of ineffective assistance of counsel on the basis of defense counsel's failure to object to the trial court's scoring of OV 19.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace